UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PACIFIC PILE & MARINE, L.P., a Delaware limited partnership,<br><br>Plaintiff,<br><br>v.<br><br>SKANSKA USA CIVIL WEST CALIFORNIA DISTRICT INC., a California corporation,<br><br>Defendant. | C26-0300 TSZ<br><br>ORDER |

THIS MATTER came before the Court on (i) a motion for partial summary judgment, docket no. 3-1 at 72–85, brought by plaintiff Pacific Pile & Marine, L.P. ("PPM"), as to liability on its breach-of-contract claim; (ii) a motion for summary judgment, docket no. 3-1 at 56–67, brought by defendant Skanska USA Civil West California District Inc. ("Skanska"), seeking dismissal of all claims asserted by PPM; and (iii) PPM's motion for partial summary judgment, docket no. 15, as to damages on its breach-of-contract claim. Having reviewed all papers filed in support of, and in opposition to, the motions, and having considered the oral arguments of counsel, the Court issued an oral ruling on September 2, 2026. *See* Minutes (docket no. 47). The Court now enters the following Order memorializing its oral ruling.

**Background**

On March 27, 2023, PPM and Skanska entered into a Subcontractor Teaming Agreement ("Teaming Agreement"). See Teaming Agreement, Ex. 1 to Taylor Decl. (docket no. 3-1 at 91). The Teaming Agreement envisioned that PPM would assist Skanska in preparing a portion of a proposal to the Washington State Department of Transportation ("WSDOT") to perform labor and furnish construction materials and equipment for the State Route 520 and Interstate 5 to Montlake Boulevard Interchange and Bridge Replacement Project (the "Project"). *Id.* The Teaming Agreement indicated that, if WSDOT selected Skanska as the general contractor for the Project, PPM "shall perform labor and shall furnish all materials and equipment to complete the work as proposed by [PPM] and as approved by [Skanska] in accordance with the terms of the Subcontract," an unexecuted form of which was attached to the Teaming Agreement. *Id.*

On March 28, 2024, Skanska and WSDOT entered into a Design-Build Contract, pursuant to which WSDOT would pay Skanska $1.3748 billion to "furnish the design of and construct the Project" within 2,740 calendar days (roughly 7½ years) after the effective date of the notice to proceed. Ex. 8 to Berry Decl. (docket no. 3-1 at 185–88). Skanska and PPM did not, however, enter into a subcontract. On July 20, 2024, Skanska sent an email to PPM indicating that it was "terminating the [Teaming] [A]greement in accordance with section 6," Ex. E to Iniguez Decl. (docket no. 3-3 at 177), which provided that "[Skanska] shall have the right in its sole discretion to terminate this Agreement for its own convenience for any reason and regardless of whether [PPM] is in default," Teaming Agreement at ¶ 6, Ex. 1 to Taylor Decl. (docket no. 3-1 at 91). On

October 2, 2024, Skanska executed a subcontract with a different entity, namely Orion Marine Contractors, Inc. See Ex. 18 to Berry Decl. (docket no. 3-2 at 101 – docket no. 3-3 at 130).

On January 29, 2025, PPM commenced suit against Skanska in King County Superior Court. See Compl. (docket no. 3-1 at 1–9). On July 22, 2025, King County Superior Court Judge Nicolas B. Straley issued an order granting summary judgment on breach-of-contract (claim 1) liability in favor of PPM and against Skanska. See Order (docket no. 3-4 at 1–3). Judge Straley also denied Skanska's motion for summary judgment, but later reconsidered and granted the motion in part as to PPM's duplicative or alternative claims of promissory estoppel (claim 2), quantum meruit (claim 3, count 1), and unjust enrichment (claim 4, count 1). See Order (docket no. 3-4 at 27–30). Judge Straley further ruled that PPM's "free-standing" claims for quantum meruit (claim 3, count 2) and unjust enrichment (claim 4, count 2) were "unaffected," and those two non-contractual claims survived Skanska's motion for summary judgment. Id.

The case was removed to this District on January 27, 2026. See Notice of Removal (docket no. 1). Relying on Judge Straley's decision concerning Skanska's liability as a matter of law, PPM moved for partial summary judgment concerning damages on its breach-of-contract claim, seeking over $8.8 million in lost profits. See Pl.'s Mot. for Partial SJ (docket no. 15). The Court subsequently concluded that Judge Straley's decisions "do **not** constitute the 'law of the case,' and the Court is **not** bound by Judge Straley's orders." Minute Order at ¶ 2 (docket no. 40) (emphasis in

original). The Court has therefore considered anew PPM's motion for partial summary judgment as to breach-of-contract liability and Skanska's motion for summary judgment.

## **Discussion**

### **A. PPM's Motion for Partial Summary Judgment on Breach-of-Contract Liability**

The Court concludes that Judge Straley erred in granting summary judgment on breach-of-contract liability in favor of PPM. To obtain summary judgment, PPM must first demonstrate an absence of genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(a). In asserting that the parties' Teaming Agreement required Skanska to enter into a subcontract with PPM, what PPM has done, at best, is to raise factual questions concerning the proper interpretation of the parties' contract. In construing a contract, the Court must focus on "the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). PPM relies on language in the Preamble and Paragraphs 1 and 7 of the Teaming Agreement, but these provisions do not **expressly** require Skanska to enter into a subcontract with PPM.[1]

---

[1] The Preamble states: "If [Skanska] is awarded the Project, [PPM] shall perform labor and shall furnish all materials and equipment to complete the work as proposed by [PPM] and as approved by [Skanska] in accordance with the terms of the Subcontract." Teaming Agreement, Ex. 1 to Taylor Decl. (docket no. 3-1 at 91). This provision does **not** impose any duty on Skanska to enter into a subcontract with PPM. Paragraph 1 provides: "If [Skanska] is awarded the Project, [Skanska] will only revise the Subcontract . . . as necessary to conform it to the Owner's Prime Contract. . . . [PPM] will sign the Subcontract, as revised to conform it to the Owner's Prime Contract, without revising any of the other terms or conditions in the Subcontract." *Id.* This verbiage restricts the parties' ability to revise the form of subcontract that was attached as an

Because the Teaming Agreement does not contain any explicit requirement that Skanska enter into a subcontract, PPM's breach-of-contract claim is premised on a theory that the parties' intent may be inferred from the actual words of the document. PPM asks the Court to infer from the provisions of the Teaming Agreement that the parties mutually intended for Skanska to have a duty to enter into a subcontract with PPM that incorporated the scope of work and cost estimate included in Skanska's bid. On a motion for summary judgment, however, the Court must draw "all justifiable inferences" in favor of the non-moving party – here, Skanska. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A justifiable inference from the language of the Teaming Agreement, which contains a unilateral clause allowing Skanska to terminate for any reason, is that Skanska was **not** bound to execute a subcontract with PPM. Thus, the Court cannot grant summary judgment concerning breach-of-contract liability in favor of PPM. Judge Straley's order, docket no. 3-4 at 1–3, granting PPM's motion for partial summary as to liability is VACATED as inconsistent with the standards governing motions brought under Rule 56, and PPM's motion, docket no. 3-1 at 72–85, is DENIED.

## B. Skanska's Motion for Summary Judgment

Skanska has moved for summary judgment on PPM's breach-of-contract claim on the ground that Skanska was entitled to terminate the Teaming Agreement "for its own

---

exhibit to the Teaming Agreement, but it does **not** require Skanska to sign the subcontract. Paragraph 7 requires that PPM's cost estimate and scope "be mutually agreed upon prior to inclusion in [Skanska's] proposal." *Id.* This term relates to the information included in the bid that Skanska submitted to WSDOT; it does **not** mandate that Skanska execute a subcontract with PPM.

convenience for any reason" and therefore cannot be held in breach for terminating the Teaming Agreement. The Court asked the parties for supplemental briefing concerning whether the termination-for-convenience clause made Skanska's promises illusory, see Minute Order at ¶ 2(a) (docket no. 42), and in response, both PPM and Skanska took the position that the Teaming Agreement is supported by each side's partial performance. The Court agrees. The parties here exchanged confidential information and worked collaboratively to enable Skanska to present a bid to WSDOT. The Court therefore concludes that the Teaming Agreement is supported by mutual consideration. *See SAK & Assocs., Inc. v. Ferguson Constr., Inc.*, 189 Wn. App. 405, 413–14, 357 P.3d 671 (2015).

The Court is further persuaded that Skanska had a right to terminate the Teaming Agreement and that, by doing so and not entering into a subcontract with PPM, Skanska did not, as a matter of law, breach the Teaming Agreement. *See Kingston v. Int'l Bus. Machs. Corp.*, 454 F. Supp. 3d 1054 (W.D. Wash. 2020). The *Kingston* Court observed that the plaintiff's partial performance of the subcontract at issue in that case did not "destroy," but rather "*established* [the d]efendant's right to invoke the unilateral termination for convenience clause." *Id.* at 1060 (emphasis in original). The same is true in this matter.[2] Judge Straley's order on reconsideration, docket no. 3-4 at 27–30, stating

---

[2] PPM's reliance on *Taylor v. Shigaki*, 84 Wn. App. 723, 930 P.2d 340 (1997), is misplaced. *Taylor* was a personal injury action against the driver of a car that struck the plaintiff. *Id.* at 725. After the plaintiff's attorney had obtained summary judgment establishing the driver's liability and negotiated a $225,000 settlement offer with the driver's insurer, the plaintiff discharged the attorney. *Id.* at 725–27. The plaintiff eventually settled with the insurer for $272,343.76. *Id.* at 727. Relying on a contingency-fee agreement with the plaintiff, the attorney filed a lien for $75,000, which represented one-third of the original offer procured by the attorney. *Id.* at 727–28. The *Taylor* Court observed that, "although a client may fire his attorney at any time, the

that Skanska "materially breached" the Teaming Agreement when it "failed or otherwise refused to enter into the subcontract . . . contemplated therein," is VACATED as unsupported by the evidence. With regard to PPM's breach-of-contract claim (claim 1), Skanska's motion for summary judgment, docket no. 3-1 at 56–67, is GRANTED, and PPM's breach-of-contract claim is DISMISSED with prejudice.

Skanska also seeks summary judgment on PPM's non-contractual claims (for promissory estoppel, quantum meruit, and unjust enrichment) on the ground that the Teaming Agreement governed the parties' relationship. With respect to PPM's non-contractual claims for the pre-bid period (prior to August 8, 2023), Judge Straley ruled that the Teaming Agreement barred PPM's duplicative or alternative non-contractual claims. PPM has offered no basis for reaching a different result, and at oral argument, PPM's counsel conceded that, because the Teaming Agreement is an enforceable contract, dismissal of PPM's non-contractual claims for the pre-bid period is required. Thus, as to the pre-bid claims, Skanska's motion for summary judgment, docket no. 3-1

---

client has no right to pay less than the attorney has earned." Id. at 730. The contingency-fee agreement contained a provision prohibiting the plaintiff from settling the matter "in such a way as to exclude the attorneys from their contingent fee and repayment of costs advanced," and thus, after the attorney had substantially performed, the plaintiff could not escape his obligation to pay the attorney's contingent fee. See id. at 725 & 730–31. Unlike the contingency-fee agreement in *Taylor*, the Teaming Agreement in this case does not contemplate any payment to PPM for its performance (whether partial, substantial, or full), but rather expressly provides that PPM "is responsible for its costs and expenses." See Teaming Agreement at ¶ 4, Ex. 1 to Taylor Decl. (docket no. 3-1 at 91). *Taylor* is distinguishable, and it does not support PPM's contention that Skanska was somehow precluded from invoking the termination-for-convenience clause in the Teaming Agreement.

at 56–67, is GRANTED, and PPM's claims for promissory estoppel (claim 2),[3] quantum meruit for the pre-bid period (claim 3, count 1), and unjust enrichment for the pre-bid period (claim 4, count 1) are DISMISSED with prejudice.

With respect to the post-bid non-contractual claims (quantum meruit and unjust enrichment for the period from August 9, 2023, to July 20, 2024), which Judge Straley concluded are "unaffected" by the existence of the Teaming Agreement, the Court DEFERS ruling. The Teaming Agreement was in effect during the period at issue, but whether the amounts sought are extra-contractual remains unclear. The record contains the identities of PPM employees who performed work during the post-bid period and the fees that PPM seeks to charge for their time, *see* Appendix C to Wells Report (docket no. 28-1 at 19), but the record does not reflect the nature of their efforts or whether their services were within the scope of the Teaming Agreement. During oral argument, PPM's attorney referred to a figure of $1,787,689.39, which was pleaded in PPM's Amended Complaint, but not discussed in PPM's expert's report. Whether the Teaming Agreement precludes recovery of this sum has not yet been adequately addressed by the parties. The portion of Skanska's motion for summary judgment that seeks dismissal of the post-bid

---

[3] Unlike the quantum meruit and unjust enrichment claims, PPM's promissory estoppel claim is not separated into alternative (pre-bid) and free-standing (post-bid) portions. *See* Am. Compl. at 9 (docket no. 1-1). The amount pleaded in connection with the "alternative" promissory estoppel claim is identical to the sum sought in relation to the breach-of-contract claim. *See id.* at 8–9. Because the Teaming Agreement governed the parties' relationship and does not permit PPM to recover under a breach-of-contract theory, nothing remains of PPM's promissory estoppel claim. *See Bardy v. Cardiac Sci. Corp.*, No. C13-778, 2013 WL 5588313, at *6 (W.D. Wash. Oct. 10, 2013).

claims for quantum meruit (claim 3, count 2) and unjust enrichment (claim 4, count 2) is therefore DEFERRED.

**C. <u>PPM's Motion for Partial Summary Judgment on Breach-of-Contract Damages</u>**

In light of the Court's rulings, PPM's motion concerning breach-of-contract damages is moot. PPM's motion for partial summary judgment as to breach-of-contract damages, docket no. 15, is therefore STRICKEN. Skanska has not cross-moved for summary judgment as to breach-of-contract damages, and the Court therefore declines to address whether PPM would be entitled to or barred from recovering, on its now defunct breach-of-contract claim, the profit that it might have made under the subcontract into which the parties never entered.

**D. <u>PPM's Remaining Claims</u>**

PPM continues to have claims for (i) quantum meruit for the post-bid period (claim 3, count 2), and (ii) unjust enrichment for the post-bid period (claim 4, count 2). Whether those claims will survive after the Court resolves the deferred portion of Skanska's motion for summary judgment is uncertain. The parties were, however, directed to address certain issues relating to these claims. Having reviewed PPM's and Skanska's supplemental briefs, docket nos. 45 and 46, respectively, the Court now rules as follows.

**1. <u>Right to Jury Trial</u>**

PPM has a right to a jury trial with respect to its quantum meruit and unjust enrichment claims. <u>*See*</u> <u>*Auburn Mech., Inc. v. Lydig Constr., Inc.*</u>, 89 Wn. App. 893,

897–905, 951 P.2d 311 (1998); see also In re B-1208 Pine, LLC (SJS Mech. Servs., LLC v. Walsh Constr. Co. II, LLC), No. 24-10088, 2024 WL 4219137, at *3 (Bankr. W.D. Wash. Sept. 17, 2024).

**2. Potential Merit of Claims**

The elements of quantum meruit are "(i) valuable services were rendered or materials were furnished, (ii) for the person sought to be charged, (iii) which services and materials were accepted by the person sought to be charged, used and enjoyed by [such person], and (iv) under such circumstances as reasonably notified [the] person sought to be charged that [the] plaintiff, in performing such services [or furnishing such materials,] was expect[ing] to be paid by [the] person sought to be charged." *Bailie Comm'ncs, Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159, 810 P.2d 12 (1991) (quoting BLACK'S LAW DICTIONARY 1243 (6th ed. 1990)); *see also* *W. Asphalt Co. v. Valle*, 25 Wn.2d 428, 438–39, 171 P.2d 159 (1946).

To prevail on an unjust enrichment claim, a plaintiff must show (i) a benefit was conferred by the plaintiff on the defendant, (ii) the defendant appreciated or knew of the benefit, and (iii) the defendant accepted or retained the benefit "under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value." *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (quoting *Bailie Comm'ncs*, 61 Wn. App. at 159–60 (quoting BLACK'S LAW DICTIONARY 1535–36 (6th ed. 1990))); *see also* WPI 301A.02 (pattern jury instruction for quasi contract claim).

In its supplemental brief, docket no. 46, and during oral argument, Skanska asserted that (i) PPM's post-bid quantum meruit claim fails because, given the terms of

the Teaming Agreement, PPM could not have had an expectation of payment, and (ii) PPM's post-bid unjust enrichment claim lacks merit because, after Skanska was awarded the Project, PPM unreasonably demanded $4 million more than its original $38 million estimate, and thus, Skanska did not unjustly retain the benefits of PPM's post-bid work. Skanska did not present these arguments in its original motion for summary judgment, and PPM has not had an opportunity to file a responsive brief. The Court therefore declines to further address these contentions at this time.

**Conclusion**

As stated on the record during the hearing conducted on September 2, 2026, and for the foregoing reasons, the Court has ruled and ORDERS as follows:

(1) Judge Straley's orders, docket no. 3-4 at 1–3 and 27–30, are VACATED;

(2) Plaintiff's motion for partial summary judgment as to breach-of-contract liability, docket no. 3-1 at 72–85, is DENIED;

(3) Defendant's motion for summary judgment, docket no. 3-1 at 56–67, is GRANTED in part and DEFERRED in part;

(4) Plaintiff's motion for partial summary judgment as to breach-of-contract damages, docket no. 15, is STRICKEN as moot;

(5) Plaintiff's claims for breach of contract (claim 1), promissory estoppel (claim 2), quantum meruit for the pre-bid period (claim 3, count 1), and unjust enrichment for the pre-bid period (claim 4, count 1) are DISMISSED with prejudice;

(6) The discovery completion deadline remains October 15, 2026;

(7) With regard to both liability and damages relating to plaintiff's post-bid claims for quantum meruit (claim 3, count 2) and unjust enrichment (claim 4, count 2), the parties are DIRECTED to file additional briefs, as follows:

(a) Skanska shall file a supplemental brief in support of its motion for summary judgment, not to exceed twelve (12) pages in length, by October 28, 2026;

(b) PPM shall file a supplemental response in opposition to Skanska's motion for summary judgment, not to exceed twelve (12) pages in length, by November 18, 2026;

(c) Skanska may, but is not required to, file a supplemental reply in support of its motion for summary judgment, not to exceed six (6) pages in length, by November 25, 2026;

(d) The deferred portion of Skanska's motion for summary judgment, docket no. 3-1 at 56–67, is RENOTED to November 25, 2026;

(8) This case is SET for a five-day jury trial to commence on March 1, 2027; a separate scheduling order will be entered setting forth the related dates and deadlines; and

(9) The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 4th day of September, 2026.

Thomas S. Zilly
United States District Judge